FILED'08 OCT 10 16:13 USDC-ORP

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

UNITED STATES OF AMERICA,

      Plaintiff,

v.

EDGAR FARREL BOISE,

      Defendant.

CR 07-477-RE

OPINION AND ORDER

REDDEN, Judge:

Before the court is defendant Edgar Farrel Boise's motion (doc. 20) to suppress all statements made by him while in custody on September 17 and 18, 2007, on the grounds that the statements were involuntary and/or obtained in violation of <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), and the Fifth Amendment to the U.S. Constitution. On October 1, 2008, the court held

PAGE 1 - OPINION AND ORDER

an evidentiary hearing and heard oral argument. For the reasons set forth below, I DENY the motion.

## Factual Background

At approximately 9:00 p.m. on September 17, 2007, Warm Springs Police Officers were dispatched to defendant Edgar Ferral Boise's residence on a report of a stabbing. Sgt. White and another officer responded to the call and found Boise's brother, Diamond Tewee, bleeding from his upper abdominal area and lower left side. Before being transported to the hospital, Mr. Tewee told the officers that his brother, Edgar Boise, stabbed him. A witness at the scene told the officers that Boise fled after stabbing Mr. Tewee.

Shortly thereafter, Sgt. White saw Boise walking back toward the residence. Sgt. White ordered Boise to lie down on the ground while the another officer handcuffed Boise. As Sgt. White escorted Boise to the patrol car, Boise asked, "What's up Dennis?" Sgt. White responded that he was being held for investigative and detoxification purposes. Boise blurted out, "I fucked up Dennis," and Sgt. White placed him in the back of the patrol car while he investigated the scene.[1] A search of Boise's residence revealed a bloody knife in Mr. Tewee's bedroom.

After clearing the crime scene, Sgt. White transported Boise to the Warm Springs Correctional Facility. Although Sgt. White did not give Boise Miranda warnings at that time, there is no evidence that any police officer asked Boise any questions. En route to the jail, Boise

---

[1] At the October 1, 2008 evidentiary hearing, Sgt. White testified that he was childhood friends with Boise and that they have known each other for many years. Sgt. White also testified that he had arrested Boise for detoxification purposes on several occasions. Sgt. White stated that while Boise appeared to be intoxicated on the night of September 17, 2008, Boise had no difficulty understanding and following orders.

PAGE 2 - OPINION AND ORDER

stated that he killed his brother and wanted to die.² At the police station, Boise repeatedly stated, "I killed my brother" during his booking and subsequent search. There is no evidence that Boise made any of these statements in response to any police questioning.

At approximately 5:00 p.m. on September 18, 2008, Detective Gary Samuel and FBI Special Agent Rhonda Townsend-Schantz conducted a taped interview of Boise at the jail. After introducing himself, Detective Samuel read Boise both his <u>Miranda</u> rights and his tribal rights, pursuant to the Indian Civil Rights Act.³ Detective Samuel explained that because Boise could be prosecuted in federal and/or tribal court, he would read Boise both the <u>Miranda</u> and Tribal Advice of Rights Forms. He also told Boise that he would explain the difference between the two forms.

Detective Samuel first advised Boise of his <u>Miranda</u> rights. He reviewed the <u>Miranda</u> Advice of Rights Form with Boise, which states in relevant part:

> You have the right to remain silent.
> Anything you say can be used against you in court.
> You have the right to talk to a lawyer for advice before we ask you any questions.
> You have a right to have a lawyer with you during the questioning.
> <u>If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish</u>.
> If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

Advice of Rights, Ex. 2 (emphasis added). After reading each individual right, Detective Samuel asked Boise if he understood the right. Boise acknowledged that he did. Boise then signed the Miranda Advice of Rights Form, acknowledging that he understood his rights and was "willing

---

²Boise did not in fact kill his brother, Diamond Tewee.

³As an enrolled member of the Warm Springs Tribe, Boise was entitled to be advised of his tribal rights. <u>See</u> 25 U.S.C. § 1301 <u>et seq</u>.

PAGE 3 - OPINION AND ORDER

to answer questions without a lawyer present." Id.

Immediately thereafter, Detective Samuel advised Boise of his Tribal rights. As with the Miranda Advice of Rights Form, Detective Samuel reviewed the Tribal Advice of Rights Form with Boise line-by-line. The tribal rights provide, in relevant part:

> You have the right to remain silent.
> Anything you say can and will be used against you in a court of law.
> <u>You have the right at your own expense, to have the presence of an attorney.</u>
> You have the right to interrupt this conversation at anytime.
> Anything you say must be freely and voluntarily said.

Warm Springs Advice of Rights, Ex. 3 (emphasis added). After reviewing each right with Boise, Detective Samuel asked Boise if he understood the right. Boise acknowledged that he did. Again, Boise signed the Advice of Rights Form, acknowledging that he understood his rights and was "willing to answer questions without a lawyer present." Id.

Detective Samuel then explained to Boise the difference between the two sets of rights:

> The difference between these two rights forms under the Indian Civil Rights Act
> which Warm Springs follows, for the purposes of tribal court, you would have to
> pay for an attorney at your own expense for a lawyer in tribal court. Should you
> be charged with a crime in the United States District Court, off the reservation,
> uh, one w– an attorney would be appointed for, for you at no expense to you. Do
> you understand the difference between these two?

Boise acknowledged that he understood.

During the interview, Boise confessed to stabbing his brother. Boise stated that he and his brother were at a party and he became intoxicated. Boise told the investigators that at some point during the night, he got into an argument or fight with his brother. Boise admitted to getting a knife and stabbing his brother in the chest. Boise expressed regret for stabbing his brother and asked Detective Samuel several questions about his brother's condition.

PAGE 4 - OPINION AND ORDER

Boise now moves to suppress all statements made by him while in police custody on September 17 and 18, 2007, and any evidence obtained as a result of those statements on the grounds that the statements were involuntary and/or obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966), and the Fifth Amendment to the U.S. Constitution.

## Discussion

The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." Before law enforcement officers may interrogate a suspect who is in custody, Miranda v. Arizona, 384 U.S. 436 (1966), requires that the officers inform the suspect that they have the right to remain silent, that their statements may be used against them in court, that they have the right to the presence of an attorney, and that if they cannot afford an attorney, one will be appointed for them prior to questioning if they so desire. Miranda v. Arizona, 384 U.S. 436, 479 (1966).

### 1. Boise was not subjected to "custodial interrogation" on September 17, 2007

Although he was in custody for investigative purposes and detoxification, Boise's September 17, 2007 statements are admissible at trial because none of the statements were preceded by, or made in response to any police interrogation. There is no evidence that the police officers made any statements or took any action on the evening of September 17, 2007, that was reasonably likely to elicit a response from Boise. Indeed, there is no evidence that Boise's statements were made in response to any police questioning at all. By all accounts, Boise repeatedly blurted out, "I killed my brother," and expressed regret for stabbing his brother. That Boise was intoxicated does not make the incriminating statements involuntary. Medeiros v. Shimoda, 889 F.2d 819, 823 (9th Cir. 1989) (finding defendant's statements voluntary despite

PAGE 5 - OPINION AND ORDER

intoxication). Those statements were voluntary.

I am not persuaded that the mere act of placing Boise in the back of a patrol car and telling him that he was in custody for investigative purposes and detoxification was "reasonably likely to elicit an incriminating response." Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980). To the contrary, those are exactly the types of statements and actions that are "normally attendant to arrest and custody" in these circumstances. See id. (Interrogation includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response.") ; see also United States v. Thierman, 678 F.2d 1331, 1334 n.3 (9th Cir. 1982) (telling a defendant about the nature of the charges he is facing is not interrogation). Additionally, I am not persuaded that the mere fact that Boise was once friendly with Sgt. White made the officer's actions "reasonably likely to elicit an incriminating response." In sum, there is no indication that Boise's September 17, 2007 statements were the product of any police coercion or interrogation. As such, Boise's September 17, 2007 statements were voluntary and thus, admissible at trial.

### 2. Detective Samuel Properly Advised Boise of His *Miranda* Rights

The government does not dispute Boise's assertion that he was in custody during the September 18, 2007 interrogation. Boise acknowledges that Detective Samuel advised him of his Miranda rights prior to interrogation. Boise contends, however, that Detective Samuel's explanation of his Miranda and Tribal rights was confusing and failed to adequately inform Boise that he had the right to have counsel present, free of charge, during the questioning that was about to begin. Additionally, Boise argues that his subsequent confession was involuntary and therefore, must be suppressed. I conclude that Boise's statements are admissible against him at

PAGE 6 - OPINION AND ORDER

trial because the police complied with the dictates of Miranda, and Boise's subsequent statements were made knowingly and voluntarily.

"Individuals posses the right to be informed, prior to custodial interrogation, 'that [they have] the right to the presence of an attorney, and that if they cannot afford an attorney, one will be appointed for them prior to questioning if they so desire.'" United States v. San Juan-Cruz, 314 F.3d 384, 387 (9th Cir. 2002) (quoting Miranda, 384 U.S. at 479). Although Miranda warnings "cannot be affirmatively misleading" or "susceptible to equivocation," United States v. San Juan-Cruz, 314 F.3d 384, 387 (9th Cir. 2002), the Supreme Court has made clear that "no talismanic incantation" is required. Duckworth v. Eagan, 492 U.S. 195, 203 (1989). The court "need not examine Miranda warnings as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably 'convey to a suspect his rights as required by Miranda.'" Duckworth, 492 U.S. at 203 (citing California v. Prysock, 453 U.S. 355, 361 (1981) (alteration omitted).

Here, Detective Samuel properly advised Boise of both his Miranda rights and his Tribal rights prior to questioning. Boise acknowledges that Detective Samuel informed him that he had the right to remain silent, that his statements may be used against him in court, that he had the right to have a lawyer during the questioning, and that if he could not afford a lawyer, one would be appointed for him prior to any questioning. Detective Samuel also informed Boise that if he decided to answer questions without a lawyer present, he had the right to stop answering at any time. Immediately after reviewing each individual right, Detective Samuel asked Boise if he understood the right. Boise acknowledged that he did. The videotape shows Boise reading the Advice of Rights forms with Detective Samuel and responding affirmatively when asked whether

PAGE 7 - OPINION AND ORDER

he understood his rights. These warnings satisfied Miranda.

Detective Samuel then advised Boise of his Tribal Rights. As an enrolled member of the Warm Springs Tribe, Boise was entitled to be advised of his tribal rights. See 25 U.S.C. § 1302. Detective Samuel stated, "you have the right at your own expense to have the presence of an attorney. You understand that? And that is the difference between the two forms, but I'll go back to that." After reviewing the remainder of the Tribal Advice of Rights form, Detective Samuel again pointed out and clarified the difference between the separate Advice of Rights forms. He explained, "for the purposes of tribal court, you would have to pay for an attorney at your own expense . . . . Should you be charged with a crime in the United States District Court, . . . an attorney would be appointed for you at no expense to you." This was an accurate explanation of the difference between Boise's Tribal and Miranda rights. There is no indication that Boise was, in fact, confused or mislead by Detective Samuel's explanation of his right to counsel. Nor is there any evidence that Detective Samuel attempted to "affirmatively mislead" Boise regarding his right to counsel. To the contrary, the videotaped interview demonstrates that Detective Samuel carefully and deliberately reviewed both sets of rights, drawing Boise's attention to the differences between his Miranda and Tribal rights. Boise signed both the Miranda and Tribal Advice of Rights forms, acknowledging that he understood his rights and that he was "willing to answer questions without a lawyer present." See Exs. 2, 3. Under the totality of the circumstances, I find that Detective Samuel's warnings "reasonably conveyed" Boise's rights under Miranda.

Citing United States v. San Jaun-Cruz, 314 F.3d 384 (9th Cir. 2002), Boise argues that the two different sets of warnings read to him by Detective Samuel were confusing and

PAGE 8 - OPINION AND ORDER

constitutionally impermissible. Boise further contends that Detective Samuel's subsequent explanation of the difference between the Miranda and tribal Advice of Rights forms failed to adequately communicate that Boise had the right to counsel, free of charge, prior to and during the interrogation that was about to begin. I disagree.

In San Juan-Cruz, officers informed defendant, who was taken into custody at a border patrol station, that pursuant to his administrative rights, he had the right to have counsel present during questioning, "but not at the government's expense." Id. At 386. Soon thereafter, officers read San Juan-Cruz his Miranda rights, under which he was advised that if he could not afford an attorney, one would be appointed before any questioning. Id. At 386-87. While handcuffed to a chair, San Juan-Cruz was interrogated and confessed to entering the country illegally. Id. at 388. Considering the totality of the circumstances, the Ninth Circuit found the conflicting sets of warnings confusing and impermissible. Id. The Ninth Circuit concluded that from defendant's perspective, "it was entirely unclear what the nature of his rights was." Id. To be valid, "[t]he warning . . . must make clear that if the arrested party would like to retain an attorney but cannot afford one, the Government is obligated to appoint an attorney for free." Id. The Ninth Circuit explained, however, that the law enforcement officers "could have rectified the situation by clarifying his statements." Id. Here, Detective Samuel did just that.

In contrast to San Juan-Cruz, Detective Samuel addressed and rectified the inconsistency between the Miranda and Tribal Advice of Rights forms by clarifying Boise's right to counsel. Detective Samuel highlighted the differences between the two forms and explained that different rights attached to tribal and federal charges. Unlike the suspect who was handcuffed to a chair when the officer read him his conflicting rights San Juan-Cruz, Detective Samuel carefully

PAGE 9 - OPINION AND ORDER

reviewed Boise's rights with him, one-by-one, while Boise sat, unrestrained, in a well-lit interview room and indicated that he understood the difference between the two sets of rights. There is no indication that the interviewing officers engaged in any conduct that could be construed as overbearing Boise's free will. This is simply not a case where a law enforcement officer's advice of Miranda rights was so confusing that "it was entirely unclear what the nature of his rights was." Id. Detective Samuel's explanation was factually correct and legally sufficient to "reasonably convey" to Boise that he had the right to an attorney, free of charge, before and during questioning.

### 3. Boise's September 18, 2007 Statements Were Voluntary

Boise's post-arrest statements are admissible because he voluntarily waived his Miranda rights before confessing to stabbing his brother. As noted, Boise reviewed both the Miranda and Tribal Advice of Rights forms with Detective Samuel and signed both forms, indicating that he was "willing to answer questions without a lawyer present." There is no evidence that he was mentally or physically impaired in any way. Nor is there any indication that Boise had any difficulty speaking, reading, or understanding English. The interview was conducted in a well-lit interview room. He was not handcuffed and spoke with Detective Samuel in a lucid and relaxed manner. The tone of the interview was conversational and Boise responded appropriately to Detective Samuel's questions. Boise also expressed regret for stabbing his brother and asked Detective Samuel several questions about his brother's medical condition. There is no evidence of coercion or improper police influence. Under the totality of the circumstances, I conclude that Boise's September 18, 2007 statements are admissible because he voluntarily and knowingly waived his Miranda rights and voluntarily confessed to stabbing his brother. Cf. Colorado v.

PAGE 10 - OPINION AND ORDER

Connelly, 479 U.S. 157, 167 (1986) (coercive police activity is "a necessary predicate" too finding a confession involuntary).

## Conclusion

For the reasons stated above, Boise's motion (doc. 20) to suppress statements is DENIED.

IT IS SO ORDERED.

DATED this 10 day of October, 2008.

*James A. Redden*
United States District Judge

PAGE 11 - OPINION AND ORDER